Marshall, C. J.
 

 This suit originated in the probate court of Fairfield county, Ohio, by the filing of a petition by Charles Dresbach, as assignee of George W. Frettinger, an insolvent debtor, to sell real estate of said insolvent estate. The deed of assignment is dated December 9,192á. Clay C.' Riegel and O. C. Belt, as administrator of James C. Belt, deceased, held mortgage liens against the real
 
 *371
 
 estate, and both lienholders filed cross-petitions, setting np their liens.
 

 On March 1, 1919, James C. Belt conveyed to George W. Frettinger 152 acres of land in Fairfield county, Ohio, for the consideration of $15,200. Ten thousand dollars was paid in cash, and a note in the sum of $5,200, payable in one year, with 6 per cent, interest, secured by a mortgage on the real estate sold, was given for the balance of the purchase money. This mortgage was never filed for record. On November 10, 1919, Frettinger borrowed $5,500 from Clay C. Riegel, giving a promissory note and securing the same by a mortgage upon the 150 acres already mortgaged to Belt, and including an additional tract of 25.92 acres. This mortgage was filed for record November 10, 1919, and immediately recorded. This mortgage recites that it was “subject to a mortgage of $5,500 on the fourth tract herein described, held by J ames C. Belt. ’ ’ This recital was found in the granting clause, as an exception to the conveyance, and was not found or even referred to in the habendum or warranty. On December 15, 1920, Belt’s note and mortgage being past due, and Frettinger being unable to pay, a new note and mortgage were given for $5,200, with 8 per cent, interest, maturing one year from and after December 15, 1920. This mortgage contained a recital in the warranty as follows:
 

 “That the said premises are free and clear from all incumbrances whatsoever, except a mortgage for $1,500 heretofore given by the said grantors herein to C. C. Riegel. ’ ’
 

 James C. Belt, at the time he received the new note and mortgage, delivered to Frettinger the first
 
 *372
 
 note which he had received from Frettinger, together with the unrecorded mortgage securing the same, but the note was not marked paid, neither was the mortgage securing the same canceled or released. Both note and mortgage remained in Frettinger’s possession until April 8,1924, at which time he gave the mortgage to O. C. Belt, as administrator of James C. Belt, upon his request. The new mortgage was recorded on December 29,1920, and thereafter Belt collectedi interest on the note during his lifetime at the rate of 8 per cent, per annum.
 

 Issue was joined upon the question of priority of the two liens upon the 152-acre tract, there being no dispute about the proceeds of the sale of the 25.92-acre tract; the proceeds of that parcel being paid to Biegel. Upon sale of the 152 acres the proceeds were found insufficient to pay both liens. At the trial, testimony was taken bearing upon the reasons for the recital in the second Belt mortgage to the effect that the Biegel mortgage was for only $1,500, and upon the intention of Frettinger and Belt in renewing the note and mortgage of March 1, 1919, and, further, upon the question whether the new note and mortgage were intended as a renewal or given and accepted as payment of the debt contracted March 1, 1919. It was further shown that Biegel had no knowledge of the transactions between Frettinger and Belt, whereby Belt surrendered the first note and‘mortgage to Frettinger and took the new note and mortgage. It was alleged in the cross-petition of Belt, as administrator, that Frettinger, at the time of the execution and delivery of the second note and mortgage, represented to Belt, and by covenant of general warranty in the mortgage warranted to
 
 *373
 
 him, that there was no other mortgage on the 152 acres, except an alleged mortgage to Riegel for $1,500, and that Belt had relied upon those representations, and without knowledge to the contrary, and by mutual mistake of himself and Frettinger, 'accepted said renewal note and mortgage.
 

 It is, of course, conceded that the mortgage was in fact $5,500, and that it covered three other tracts in addition to the 152-acre tract. On December 15, 1920, at the time of the execution of the new note and mortgage, the interest was paid on the old mortgage, in full, at the rate of 6 per- cent, per annum, and thereafter interest was collected at the rate of 8 per cent, per annum. The cross-petition of Belt, as administrator, ignored the new note and mortgage and pleaded the old mortgage, claiming only 6 per cent, per annum from March 1,1919, giving full credit for all interest payments which had been made.
 

 The cause was first heard in the probate court, where the evidence was weighed and considered, and that court found in favor of the priority of the Belt mortgage. Upon appeal to the court of common pleas, where the case was tried
 
 de novo,
 
 that court reached the same conclusion, and, although there were no separate findings of fact, the conclusion reached by that court could only have been upon the basis of a finding that Frettinger and Belt intended a renewal of the first notes and mortgage, and not a payment. Error was prosecuted to the Court of Appeals, and one of the assignments of error related to the weight of the evidence, and it was therefore the duty of that court to weigh the evidence, to determine whether the judgment was
 
 *374
 
 manifestly against the weight of the evidence. That court affirmed the judgment of the trial courts. This court will not weigh the evidence, or consider it, further than to ascertain whether there was evidence adduced tó support the conclusions reached. The facts in the case are undisputed, in the sense that no witnesses contradicted any other witnesses upon any important or essential feature. Much of the evidence consisted of the mortgages themselves. The oral testimony bore almost exclusively upon the issue of intention. Upon this point Frettinger was the principal witness. He testified at length to the conversations between himself and James C. Belt, relating to the execution of the new note and mortgage, and it must be admitted that portions of that testimony were susceptible of the interpretation that payment was intended. Other portions are equally susceptible of the interpretation that a renewal was intended. The trial courts having reached the conclusion that the parties intended a renewal, and the Court of Appeals not having disturbed that judgment on a consideration of the weight of the evidence, and it being apparent that the record contains evidence to support the conclusions reached by the lower courts, this court will not review the evidence to determine its weight, or substitute its judgment for that of the court which was charged primarily with determining the facts.
 

 , The agreement of the parties controls as to whether a new note is accepted as payment or renewal. If there has not been an agreement in express terms, the intention may be ascertained by the facts and circumstances. In the instant case Frettinger testified repeatedly that it was intended
 
 *375
 
 as a renewal. The other party to the agreement, James C. Belt, having died, his testimony is not available.
 

 In
 
 First Nat. Bank
 
 v.
 
 Green,
 
 40 Ohio St., 431, a new note was declared to be a payment of the former indebtedness, but this was so held because of there having been an express agreement to that effect. At page 440 of the opinion the principle is declared that the absence of express words touching payment and release ought to weigh against its existence. This matter is discussed in 41 Corpus Juris, 806, where it is declared that it is entirely a question of intention, and that as a general rule the original mortgage will not be discharged, in the absence of a clear intention to that effect.
 

 It has been urged in argument that the recording act is conclusive upon the question of priority. Section 8542, General Code, provides in part:
 

 “All mortgages, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and take effect from the time they are delivered to the recorder -of the proper county for record.”
 

 This statute, alone and uninfluenced by the contract of the parties, would give priority to the mortgage first recorded, regardless of the dates of execution and delivery. It has been held that mere notice and knowledge of a prior unrecorded mortgage, where no reference is made to it in the mortgage later executed, but first recorded, will not postpone the second mortgage.
 
 Stansell
 
 v.
 
 Roberts,
 
 13 Ohio, 148, 42 Am. Dec., 193;
 
 Mayham
 
 v.
 
 Coombs,
 
 14 Ohio, 428;
 
 Betz
 
 v.
 
 Snyder,
 
 48 Ohio St., 492, 499, 28 N. E.,
 
 *376
 
 234, 13 L. R. A., 235. It has also been, held in this state that an exception relating to the first mortgage, contained in the warranty clause of the second mortgage, will not suffice to postpone the second mortgage.
 
 Bercaw
 
 v. Cockerill, 20 Ohio St., 163.
 

 However well settled these principles, they are not conclusive of the instant case. The administrator of Belt does not rest solely upon Riegel’s knowledge of his mortgage. Neither was the recital in the Riegel mortgage contained in the warranty. It was an express exception from the conveyance.' Frettinger conveyed to Riegel only an equity of redemption, and Riegel accepted the conveyance subject to the debt to Belt secured by the earlier mortgage. The debt to Belt had its birth March 1, 1919, and it had not yet been paid at the time Frettinger executed his deed of assignment. The equity acquired by Riegel in the real estate of Frettinger could only be enlarged by the discharge of the debt to which that conveyance was subject. Renewal would be ineffective. The new note and mortgage given to Belt in 1920 likewise recognized the existence of the Riegel mortgage, but only to the extent of $1,500. The recognition of the Riegel mortgage in the new mortgage given to., Belt differs from the recognition of the original Belt mortgage in the execution of the Riegel mortgage, in that the recognition and the exception are found in the granting clause in the conveyance to Riegel, while in the second Belt mortgage the recognition of the Riegel mortgage is found only in the warranty clause. This distinction has been recognized in the former decisions of this court. In
 
 Coe
 
 v.
 
 Columbus, P. & I. Rd. Co.,
 
 10 Ohio St., 372, at page 406 of the opinion (75 Am. Dec.,
 
 *377
 
 518), we find language directly applicable:
 

 “Upon the principles which have been stated, applicable to mortgages of real estate, even notice of- a prior equitable mortgage would not make it valid-as to a subsequent mortgage. Does this principle apply to the third mortgage in this case? We think it does not. It was not intended by the statute, upon the construction of which the principle depends, to give to any mortgage, upon the ground of its prior, record, an effect forbidden by the very terms of the mortgage itself. The third mortgage is expressly made subject to the first and second mortgages, and, according to the clear intent of the parties expressed upon its face, can only operate as a security upon that part, or so much of the property as is not required for the payment of the bonds mentioned and specified in the first and second mortgages.”
 

 On the other hand, it was declared in
 
 Bercaw
 
 v.
 
 Cockerill, supra:
 

 “1. Under the statutes of this State, mortgages have priority of lien in the order of their delivery to the recorder of the proper county for record.
 

 “2. This statutory rule is not affected by the fact that the supposed lien of a prior unrecorded mortgage is excepted from the covenants of warranty in a subsequent mortgage.” )
 

 Even in that case, where the recital in the warranty was held not to be sufficient to postpone the second mortgage, it was stated in the opinion (20 Ohio St., at page 166):
 

 “It is clear, therefore, that the plaintiff’s mortgage, having been first presented for record, is entitled to priority unless the exception found in' its covenants of warranty works a different result. It
 
 *378
 
 is claimed by counsel for Palmer that the effect of the exception is to subject the premises in the hands of the grantee to the satisfaction of the mortgage previously executed in favor of Palmer, and to limit the operation of the mortgage in which it was inserted, to the equity of redemption remaining in the grantor at the time of its execution.
 
 And we do not doubt that such would be the effect of a similar reservation if found either in the granting, or in the habendum clause of the plaintiff’s mortgage.
 
 For, as was said in the case of
 
 Coe
 
 v.
 
 Col., Piq. & Ind. R. R. Co.: ‘It
 
 was not intended by the statute to give to any mortgage, upon the ground of its prior record, an effect forbidden by the very terms .of the mortgage itself.’ 10 Ohio St., 406. But that was a case in which a third mortgage was in express terms made subject to the first and second one.”
 

 These authorities have never been reversed, or even criticised, in the later decisions of this court, but, on the contrary, have been quoted with approval in the case of
 
 Bundy
 
 v.
 
 Iron Co.,
 
 38 Ohio St., 300, where it is stated at page 312 of the opinion:
 

 “The second question is: Does the recognition of the first mortgage in the second have the effect to give it priority? We think this question must be answered in the affirmative. The second mortgage' was executed in due form by the corporation, and was made expressly subject to the mortgage to Bundy. Hence, all subsequently acquired liens that are subject to the second mortgage are necessarily also subject to the first.
 
 Coe
 
 v.
 
 Railroad Co.,
 
 10 Ohio St., 374 [75 Am. Dec., 518];
 
 Bercaw
 
 v.
 
 Cockerill,
 
 20 Ohio St., 166.”
 

 ■ By the overwhelming weight of authority it is es
 
 *379
 
 tablished that no change in the form of indebtedness, or in the mode or time of payment, will operate as payment or discharge of a mortgage; that a mortgage secures the debt, and not the note or bond or other evidence of the debt; and that nothing short of actual payment of the debt, or an express release, will operate to discharge the mortgage. This is the rule universally declared by text-writers, and the authorities are practically unanimous in support of it. In
 
 Kuhns
 
 v.
 
 McGeah,
 
 38 Ohio St., 468, there were repeated renewals of the notes secured by a recorded mortgage. A purchaser acquired the land before the last renewals and without actual notice of the mortgage. It was held that the mortgage had priority. In harmony with the conclusions we have reached in the instant'Case, it was held that the purchaser acquired only an equity of redemption for the reason that the grantor had no greater estate to convey. At page 472 the opinion states:
 

 “It is claimed, however, that the taking up of the old notes and giving others was a payment and satisfaction of the indebtedness, as respects the rights of the mortgagee, at least in so far as it was secured by the mortgage; but the law is well settled that the substitution of the new note is not a payment or release of the mortgage even as to subsequent purchasers. Jones on Mortgages, Section 927, and cases therein cited. ‘A mortgage secures the debt and not the note, or bond, or other evidence of it.’
 
 Id.
 
 Section 924.”
 

 In the instant case the exception in the granting clause made the situation between Riegel and James C. Belt the same as though the Belt mortgage had been recorded. The first note was not receipted or
 
 *380
 
 canceled, and the mortgage securing it was not canceled or released. -By taking the new note and mortgage, James C. Belt had only another promise in the place of' the former promise, and there is nothing in this record to indicate an agreement or intention on the part of either Belt or Frettinger that the new note and mortgage should operate as a payment and discharge of the original note and mortgage. Riegel accepted the conveyance of his mortgage subject to the mortgage in favor of Belt. Riegel was not a party to the transaction whereby a new note and mortgage were given to Belt, but he certainly lost nothing by that transaction. Riegel took his mortgage with an express stipulation that the mortgage in favor of Belt should be first paid. It has never been paid; The later transaction did not operate to his prejudice, and his situation was therefore neither better nor worse than it was before. We find no error in the judgments of the lower courts and they will therefore be affirmed.
 

 Judgment affirmed.
 

 Allen, Kinkajde, Robinson and Jones, JJ., concur.