## ZIMPHER v SCHWARTZ et

Ohio Appeals, 2nd Dist, Miami Co.

No. 386. Decided Jan. 18, 1940.

A. W. and J. H. DeWeese, Piqua, for appellants.

Berry & McCulloch, Piqua, for appellees.

**OPINION**

By GEIGER, J.

This case comes before us on appeal on questions of law and fact from an order of the common pleas court of Miami County, Ohio. The action there began upon the filing of a petition by John P. Zimpher in which he alleges that there is due to him from the defendant, Fred Schwartz, the sum of $241.00 on an account attached.

For a second cause of action it is asserted that he perfected a mechanic's lien for his claim.

Charles Helmer, an appellant, for his cross-petition, sets up a labor claim which he asserts has been perfected as a mechanic's lien.

The Third Savings Bank & Loan Company, appellee, for a first cause of action in its cross-petition states that there is due from Schwartz and his wife $3922.15 upon a promissory note for which a mortgage was given under date of July 9, 1937 upon the property in

question, and it is alleged that such mortgage, by its filing on July 12, 1937, became a first lien upon the property.

John J. Thompson, an appellant, sets up a perfected mechanic's lien for $247.00 for material furnished.

The J. A. Shade Lumber Company, an appellant, sets up a perfected mechanic's lien for material furnished, the lien being filed on the 12th of November, 1937.

The J. A. Shade Lumber Company, Charles C. Helmer and John J. Thompson filed a joint reply to the cross-petition of the Third Savings & Loan Company admitting the execution of the note and mortgage on July 9, 1937, and that the same was received for record on July 12th and they deny all other allegations.

For a second defense to the new matter in the answer and cross-petition they allege that the mortgage did not contain any construction mortgage covenant clause as required by statute and was not executed and filed in the Recorder's office until long after the commencement of the construction and improvement of the buildings located on the lot; that the date of the commencement of work of construction and improvement was May 13, 1937, and had proceeded to such an extent at the time of the filing of the mortgage as to be obvious and apparent to one making inspection of the premises, that said mortgage is not the first and best lien on the premises, but is subject to the mechanic liens of the plaintiff and the replying defendants. They pray that upon distribution that their liens be declared to be the first and best.

The Third Savings & Loan Co. for reply to the answer of the plaintiff and of the defendants, The J. A. Shade Lumber Company, Charles C. Helmer and John J. Thompson to its cross-petition denies their allegations and says on the 24th day of April, 1937, defendant and his wife made and delivered to the answering defendant their promissory note in the sum of $2500.00, taking a mortgage upon the property, dated 24th of April, 1937; that the mortgage was recorded on the 26th day of April, 1937.

Defendant further says on the 9th day of July, 1937, for the purpose of refinancing the note and mortgage, above described, Schwartz and his wife executed to the defendant their note and mortgage in the sum of $3700.00, $2532.10 of which was the principal and accrued interest of the note and mortgage first described; that the note and mortgage given on the 9th of July, 1937, was for the purpose of refinancing the note and mortgage above described and that the only additional funds furnished Schwartz was the sum of $1167.90.

Defendant alleges that it became subrogated under the mortgage last executed to all the right, title and interest it had to the real property under and by virtue of the mortgage first made. Defendant prays that it may be declared to have a first and best lien on the funds, in the hands of the sheriff, derived from the sale of the real estate, to the extent of $2500.00.

An Agreed Statement of Facts was filed by the parties which stipulated, in substance, that on the 24th day of April, 1937, The Third Savings & Loan Company loaned $2500.00 to Schwartz and wife and took their note and mortgage, which mortgage was recorded on the 26th day of April, 1937; that Schwartz began to improve the real estate and the defendant lien-holders began to furnish material and perform labor on the premises on the 13th day of May from which date work was continually and visibly in progress to the 3rd day of November, 1937. of which work the Loan Company had knowledge. It is further stipulated that the Loan Company loaned Schwartz the additional sum of $1167.90 and took a new note and mortgage in the sum of $3700 on the 8th day of July, 1937; that the $2500.00 note and mortgage were paid from the proceeds of the $3700.00 mortgage and the said $2500.00 mortgage was cancelled and discharged of record as fully paid on the 12th of July, 1937.

It is further stipulated that the lien holders have perfected their liens all according to statute, which liens were filed of record within the statutory period, but subsequent to the $3700.00 mort-

gage to the defendant loan company. The stipulation states that the question is whether the defendant loan company is entitled to be subrogated to the amount of its first mortgage in preference to the lien holders and the further question is as to the value of the dower interest of Lottie Schwartz. It is further agreed that the mortgage of April 24, 1937, in the principal sum of $2500.00 was a purchase money mortgage, without recital to that effect in either the deed or mortgage.

A number of entries are filed reciting that the defendant, Schwartz, is in default for answer and that the plaintiff and the several cross-petitioners are entitled to judgment as claimed and that the question as to validity and priority of their liens is reserved for further consideration.

On December 12, 1937, a sale of the premises was confirmed to The J. A. Shade Lumber Company,

"And the purchaser is hereby subrogated to all the rights of said lien holders in said premises, so far as they may be paid herein for the protection of the title;"

In an entry relating to the claim of the Third Savings & Loan Company, the Court finds that the answer of Lottie Schwartz, the wife, admits the lien of the defendant and it is found that there is due on the note and mortgage the amount claimed, for which judgment is awarded, the question of priority being reserved.

On August 29, 1939, an entry is filed in which it is found that the defendant, The Third Savings & Loan Company is entitled to be subrogated to its original mortgage and that it had the first and best lien on the premises in the amount due on its original mortgage; that as to the plaintiff and all of the defendants except the Third Savings & Loan Co., the defendant, Lottie Schwartz, was entitled to dower and she having released her dower to the Third Savings & Loan Co., it is ordered that the same be paid to that company. An order of distribution is made to the Third Sav-

ings Bank & Loan Company in the sum of $2962.00 being the amount due on the original mortgage note in the sum of $2532.10 together with $214 being the value of inchoate right of dower of Lottie Schwartz; to the plaintiff, John Zimpher, the sum of $118.29 to apply on his judgment and lien, the same being 14% of the remainder of the proceeds of the sale; to the defendant, J. A. Shade Lumber Company, $464 to apply on its judgment, being 55% of the remainder of the proceeds of the sale; to the defendant, Helmer, the sum of $143.62 to apply on his judgment, being 17% of the remainder of the proceeds of the sale; to the defendant, Thompson, the sum of $118.29 being 14% of the remainder of the proceeds of the sale.

It is ordered that the premises be released from the liens of the Piqua National Bank and other liens, to which order, Thompson, Helmer and the J. A. Shade Lumber Company except and give notice of appeal on law and fact.

It thus appears that of all the original lien holders, the case is before this Court only to determine the respective rights of the J. A. Shade Lumber Company, Charles C. Helmer and John J. Thompson on their respective mechanic liens, and of the Third Savings & Loan Company on its mortgage lien.

The question is whether or not the mechanic lien holders, The Lumber Company, Helmer and Thompson, are entitled to have applied to their liens the proceeds of the sale of the real estate in preference to the payment to the Third Savings & Loan Company of $2500, the amount of the original mortgage dated April 24, 1937, to which amount the Loan Company claims to have been subrogated when the second mortgage for $3700, dated July 8, 1937, was given.

The Court below in his opinion referred to **Straman v Rechtine, 58 Oh St** 443 and quotes at large from that case and also refers to Jones on Mortgages, 7 Ed., Sec. 971, and further states to the effect that in all of the decisions relative to subrogation the determination of the Court is reached by answering

the question whether the claimant lien holders have had their rights jeopardized by the Court's permitting subrogation and further states that it was the intention of the mortgagor and mortgagee that the lien of the original mortgage would continue after its release and absorption into the later mortgage.

The Court finds that the interest of the mechanic lien holders will not be jeopardized by the allowance of the subrogation inasmuch as the $2500.00 mortgage was in existence at the time they began the construction of the building upon which their mechanic liens are based.

The appellants have filed an assignment of errors to the effect that the Court erred in its finding that the Loan Company was not charged with knowledge that the mechanics might perfect their liens; in finding that the Loan Company could not have taken advantage of §8321-1 GC to protect itself; in finding that the rights of the lien holders were not jeopardized by the giving of the second mortgage; in finding that it was the intention of the mortgagor and mortgagee that the lien on the original mortgage should continue; and finally, that the Court erred in its finding that the first mortgage was a first and best lien upon the premises.

Counsel for both sides have furnished interesting briefs supporting their respective positions, which we have read carefully and have examined all cases cited together with many others.

Counsel for the appellant states his position briefly as follows; all persons who seek subrogation must allege facts which would entitle them thereto, either by way of fraud, mistake or an agreement that the lien of the second mortgage should be a first lien upon the premises. Counsel asserts that there must be an agreement that the second mortgage should continue as a first lien acquiesced in by all concerned and that subrogation can not be invoked to work a hardship upon the intervening lienors. It is also asserted that if the Loan Company wanted to protect itself in this case, it had available the provi-

sions of §8321-1 GC, designed for the protection of one who loans money to be used in the improvement of property, but that it did not avail itself of this provision.

In support of the second error complained of, it is claimed that the Loan Company does not allege that the transaction was a result of a mistake of facts or fraud or agreement among the parties, and having failed to take advantage of the section above cited, it is not entitled to subrogation.

As to the third assignment of error, it is claimed that the mechanics had performed work on the house, when the second mortgage was taken, to such an extent that the property was enhanced in value and the equities in the property were greater than when the original mortgage was given and that therefore their rights were jeopardized by the second mortgage.

As to the fourth assignment, counsel asserts that there is no foundation for the judgment of the Court below in finding that there was an intention between the parties to continue the lien of the first mortgage and in conclusion counsel asserts that there was no agreement that the second mortgage should be a first lien; no lack of knowledge as to the intervening lien holders; no mistake of fact but only of law, and that, therefore, equity will not intervene and that there is nothing alleged that would warrant a finding of subrogation and that the agreed statement of facts warrants the refusal to apply the doctrine.

Counsel for appellee points out the general principles of subrogation as found in **38 O. Jur., 240, et seq.**, and he also cites certain cases and quotes at large from the case of **Harter Bank v First Savings & Loan Company, 11 Abs 300**, and discusses at length cases which we will briefly examine. He asserts the the lien holders began to furnish material and perform labor on the property almost three weeks after the first mortgage had been recorded and that they could not have been prejudiced by the execution of the new mortgage if subrogation be granted only to the ex-

tent of the amount due on the first mortgage. He asserts that the cancellation of the first mortgage did not prevent the Loan Company from claiming rights thereunder and that the holder of the first mortgage, which was paid off from the proceeds of the new mortgage, given subsequent to the commencement of the repairs on the property, is entitled to priority over the mechanic's and material men's liens, by way of subrogation, in an amount equal to the money advanced to pay off the first mortgage and that if such subrogation is not allowed, an injustice and hardship will result.

### THE LAW

We examine the law briefly and first point to §8321-1 GC which provides for the protection of one who loans money for building purposes.

This section affords protection for those seeking to loan money on property which is under improvement by the erection of buildings, but this appellee did not avail itself of it and consequently can not claim its benefits. This does not mean that it may not secure the rights claimed by it by other provisions of the law.

**Ohio Jurisprudence** is cited by both parties and we may allude to certain sections under the heading **"Subrogation, Vol. 38, O. Jur."** It is there stated, that subrogation is an equitable and not a legal right and is a substitution of one person for another with reference to a lawful claim or right. Subrogation is nothing more than an assignment by operation of law. It is then pertinently stated that the word "subrogation" sometimes is doubtfully employed to describe the equity which protects the priority of a lien holder who takes a new lien, and intending to retain his property, cancels the old lien in real or supposed ignorance or mistake respecting the existence of an intervening lien.

The doctrine is founded in equity and natural justice and will be invoked only when necessary to secure some equitable right without which an injustice will be done and will not be enforced where it will work injustice to the rights of those having equal equities or prefer one creditor over another where an inequitable result will be accomplished thereby. It will not be decreed in favor of a volunteer, who, without any duty, pays the debt of another.

In the present discussion, counsel have considered the question as being one of "subrogation", although we have some doubts whether it properly comes within such principle.

In the case at bar the Loan Company made a mortgage for $2500 and after the lienors had begun their work it made a second mortgage for $3700. It now abandons its first claim that by virtue of such second mortgage it had a prior right over the materialmen, and bottoms its claim upon the single fact that $2500 of the second mortgage was used in the payment of the first mortgage which was in existence at the time the mechanics began their work and that therefore these mechanics are in no worse position than they would have been had the second mortgage not been given. It is asserted that they were in a better position inasmuch as the last $1200 furnished funds that were used in the completion of the building.

The Agreed Statement of Facts becomes of importance. It is first agreed that the $2500 mortgage was recorded on the 26th of April, 1937, and that from the 13th day of May work was continually and visibly in progress to the third day of November, "and of the improvement work the defendant, Loan Company, had knowledge."

It is further agreed that the $2500 note and mortgage was **paid** from the proceeds of the $3700 mortgage and that said $2500 mortgage was cancelled and discharged of record "as fully paid on the 12th day of July, 1937".

It is further agreed that the principal sum of $2500 was a purchase money mortgage, but without recital to that effect in either deed or mortgage.

We may briefly refer to cases which have been under discussion, which we believe are of interst, not endeavoring to discuss them in detail. **Straman, Admr. v Rechtine, et, 58 Oh St 443,** is

much quoted by counsel. As we comment upon it, we will emphasize those facts appearing in the record of that case which seem to us to be of importance.

The first syllabus is to the effect that where money is loaned **under an agreement** that it shall be used in payment of a lien **"and it is so used"**, and the agreement is that one who so loans the money shall have a first lien to secure his money and through some **defect** in the new mortgage or **oversight** as to other liens the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned when it can be done without placing greater burden upon the intervening lienholders than if the old mortgage had not been released, but not as against a lienholder who acquired his lien after the release of the old mortgage without notice of the new mortgage.

The two mortgages being made by the same company, there would be no occasion for an **agreement** between the mortgage lien holders; there was no defect or oversight, which seems to be essential features of subrogation. The mortgages were both good and the company had, by the Agreed Statement of Facts, knowledge of the work being done upon the premises. There could be no oversight by the comany based upon a claim that it did not know that the mechanic's lien men would perfect their liens. It certainly knew, or should have known, that that was a right given by law to the lienors and that they would no doubt assert it.

The case of **Union Trust Company v Lessovitz, 4 OO 499**, decided by the Court of Appeals of Cuyahoga County in 1931 holds that where a person, through **misrepresentation** or **oversight** is **induced** to pay off an existing mortgage lien on the **assurance** that he shall have a first mortgage, and the money can not be made on the second mortgage, he is entitled to be subrogated to the mortgages cancelled by the money advanced, where it places no greater burden on the intervening judg-

ment lienholder than would have existed had the old mortgage not been cancelled.

This is an interesting case, but involves the question of the right of subrogation based upon the fact that through **misrepresentation** or **oversight** a person is **induced** to loan money and where there is an **assurance** that he should have a first mortgage lien on the property. We discover neither "misrepresentation" nor "oversight" and there was no "assurance" inasmuch as the mechanic lienors did not enter into any such contract and the only assurance that could have been given would have been that the mortgagee of the first mortgage assured the mortgagee of the second mortgage that it was to have a lien, but being the same party, of course, no such assurance would be of any consequence.

The case of Harter Bank v Cooper, heretofore referred to under a different title, **11 Abs 300**, decided October 23, 1931, states in the syllabus that the holder of second mortgage, proceeds of which were used to pay off existing first mortgage, is given priority by subrogation over second mortgage previously recorded. This case reviews a number of cases to which we have or shall hereafter allude. In that case the Savings and Loan Company of Massillon having had a loan of record prior to the mortgage of the Harter Bank, and this prior mortgage having been paid off by taking a new mortgage recorded subsequent to the Harter Bank mortgage, the Loan Company claimed to be subrogated to the extent that the proceeds from the second mortgage were taken to pay off the mortgage first recorded, and the Court held. in substance, that the equity under all the facts and circumstances are such as entitle the Loan Company to priority by subrogation to the extent that the money was advanced for the cancellation of the first mortgage.

It will be observed that this decision was rendered by the Court of Appeals of the Fifth District in which Lemert, J. delivered the opinion, concurred in by Sherick, PJ., and Montgomery, J. and

that the case was decided October 23, 1931.

We call attention to the Court and Judges rendering the opinion last above referred to for the reason that we find the case of **Morris Plan Bank v Most, 44 Oh Ap 180,** was decided by the same Court on November 16, 1932, and it seems, in some particulars, to contradict the position taken by the Court in the Harter Bank case. The fifth, sixth and eighth syllabi are to the effect:

"5. Where new mortgage was given and old mortgage cancelled, assignee of new mortgage could not, as against laborers and materialmen, be subrogated to assignor's rights under old mortgage; assignor knowing that construction was in progress, and being chargeable with knowledge of statute affording opportunity for protection against intervening mechanics' liens (§8321-1 GC)."

"6. Where new mortgage was taken and old mortgage cancelled with intent to create first lien, assignee of new mortgage, to acquire priority over intervening mechanics' liens, could not be subrogated to assignor's rights under old mortgage; mistake of law being involved (§8321-1 GC)."

"8. Where mortgagor, having directed that old mortgage be paid from proceeds of new mortgage, paid balance thereof to laborers and materialmen, assignee of new mortgage, as against holders of intervening mechanics' liens, could not be subrogated to such laborers' and materialmen's rights (§8321-1 GC)."

It will be noted in this case that the assignor of the mortgage was in fact the first mortgagee and the second mortgage was given to it before it made the assignment and the court treats the matter as if the mortgage were still held by the original mortgagee, disregarding the assignment. The Court on page 184 comments to the effect:

"Equity in the granting of relief by subrogation is largely concerned with and rests its interference, when called upon, on the prevention of frauds and relief against mistakes, and it is correctly stated that the right to it depends upon the facts and circumstances of each particular case. There is no question of fraud in this action; hence the issue is narrowed to a consideration of the question of mistake."

The Court holds that a cancellation of a mortgage on record is not conclusive as to the discharge or payment of the indebtedness. We again call attention to the Agreed Statement of Facts where it is stated that the "$2500 note and mortgage were paid from the proceeds of the $3700 mortgage, and said $2500 mortgage was cancelled and discharged of record as fully paid".

The Court states on page 186:

"But there is a far more cogent reason why subrogation should not here be allowed. As set forth in the notes appearing in 58 L. R. A., 805, and 33 A. L. R. 157, the general rule almost universally followed, unless joined with fraud or other circumstance demanding relief, such as mistake of fact or want of consideration is that, 'while the release of a mortgage may be set aside on the ground of mistake of fact, as, for example, that the mortgagee did not know of the existence of other liens upon the land when he released a first mortgage and took a new mortgage thereon, he cannot be relieved on the ground of a mistake of law as to the priority of the second mortgage he takes over liens which were subsequent to his original mortgage, but which will be prior to the new mortgage.'"

The Court then points out various conditions that surrounded the mortgage in question, which are strikingly similar to those in the case at bar, and concludes,

"We see no clear right established in the applicant to subrogation in this ac-

tion, and it is therefore ordered that a decree be entered in this court such as that entered in the court below."

Whatever may have been the authority of the Harter case, we think that the Morris Plan Bank case just alluded to is more pertinent.

We now examine certain other authorities.

In A.L.R., Vol. 33, P. 151, it is stated:

"As between the parties and the holders of liens existing against the property at the time a senior lien is discharged and another lien taken in renewal, it has been held that the transaction does not amount to a payment, and will not affect the priority of lien; at least, unless the subsequent lien holder has acted to his prejudice in the matter by relying upon the apparent discharge of the senior lien."

This statement is again met by the Agreed Statement of Facts to the effect that the first mortgage was cancelled and the note **paid** by the second mortgage.

On page 157, under heading "Mistake of Mortgagee", same authority, we find a general statement that,

"Where an existing lien has been discharged by the holder and a renewal lien taken **in ignorance of intervening lien against the property**, the mortgagee will be regarded as acting under such a mistake of fact as to entitle him to relief by a restoration of his priority, if the rights of innocent parties are not involved."

We again are met by the Agreed Statement of Facts that the Loan Company had knowledge of the intervening liens.

The matter is stated in another way in 98 A.L.R., p. 845, to the effect:

"As between the parties and the holders of liens existing against the property at the time a senior mortgage is discharged and another taken in renewal, it has been held that the transaction does

not amount to a payment and will not affect the priority of the lien; and this seems particularly true where the circumstances show that there was no intent that the lien should be lost by the release of the original mortgage, and the junior lien holder has not been prejudiced by any change in status caused by reliance on the release."

It will again be noted that the Agreed Statement of Facts in the matters we have pointed out differentiates the case at bar from the general principle announced.

The first case cited in support is that of **Reigel v Belt, 119 Oh St 369.** In the 4th syllabus, it is stated:

"4. Whether a new note and mortgage operates as a renewal or payment depends upon the agreement of the parties. Where no receipt is given for the amount of the debt, and no release or satisfaction of the mortgage is executed, the presumption is that the later note and mortgage were not intended to pay and discharge the earlier."

Here again we are confronted with the agreement of the parties to the effect that the first mortgage and note were paid by the second.

In 41 C. J. at page 807 it is stated:

"Where a note secured by mortgage is taken up, at or before its maturity, and a new or renewal note substituted for it, the mortgage continues as security for the debt in its new form and there is no change in the rights or remedies of the mortgagee, **unless there is an actual agreement or mutual intention of the parties that the mortgage shall be discharged, or the debt regarded as paid, by the new note.**"

We think the case at bar falls within this exception by virtue of the provisions of the Agreed Statement of Facts. The matter resolves itself into this. A mortgage is given, which by virtue of its filing, is a prior lien upon the real estate. At a subsequent date mechanic lienors began their labor and,

at a still subsequent date, the old mortgage is cancelled and a new one given for a greater amount, there being no allusion within the mortgage to the statutory provisions saving the lien as against materialmen and laborers. The Agreed Statement of Facts advises us that at the time of the giving of the new mortgage the work was continually and visibly in progress and that the defendant, Loan Company, had knowledge of this and that the $2500 note and mortgage were paid from the proceeds of the $3700 mortgage and "said $2500 mortgage was cancelled and discharged of record as fully paid".

We think that these facts and circumstances clearly remove this cause from that class of cases that recognize and assert a right of subrogation. The fact is that the Loan Company was simply careless in failing either to get the consent of the lienors and in not putting in the saving provision of the statute. It gave up its old mortgage security which was, by the Agreed Statement of Facts, cancelled and paid and was out of existence for all purposes inasmuch as there has been failure to show any mistake or fraud by virtue of which it might have continued to be in existence.

This case is reminiscent of the questions decided by one of the present Judges of this Court twenty years ago in Geer v Tuggles, 22 N. P. (N.S.) 129.

Judgment of this Court will be that the money derived from the sale of the real estate must first be applied to the payment of the mechanics' liens and that if anything remains, after such payments are made, it would go to the Loan Company as holding the first lien junior to that of the mechanics' liens.

The rights of the widow, of course, are to be reserved in view of this holding of the Court.

Judgment reversed and cause remanded.

BARNES, J., concurs.
HORNBECK, PJ., dissents.