TRANSOHIO SAVINGS BANK, F.S.B.

v.

PATTERSON; Cadle Company II, Inc., Appellant; DeVille, Appellee.

[Cite as *TransOhio Savings Bank, F.S.B. v. Patterson* (1990), 69 Ohio App.3d 471.]

Court of Appeals of Ohio,
Summit County.

No. 14510.

Decided Sept. 19, 1990.

*Timothy J. Taber,* for appellant.

*John J. Rambacher,* for appellee.

CACIOPPO, Judge.

The question presented in this appeal is whether a mortgagee of real property loses priority to a subsequent judgment creditor of the mortgagor

when he enters an agreement with the mortgagor attempting to modify a lease that the mortgage secures. We hold that he does not and affirm.

The facts of this case are not in dispute. On July 12, 1983, HIS Company, Unlimited, doing business as the Comfort Store, executed a ten-year lease agreement with appellee, Roger L. DeVille, to lease commercial property located in the Belden Village Mall. The operation's president, Peter Patterson, signed the agreement in both his corporate and individual capacities. To secure the lease agreement, Patterson and his wife mortgaged their Akron residence to DeVille. The mortgage was duly recorded on September 6, 1983.

Unfortunately, Patterson's business was not a success. On January 17, 1985, the Federal Savings and Loan Insurance Corporation obtained a judgment against Patterson for $112,834.42 plus interest. A certificate of judgment was filed in Summit County on January 24, 1985. Defendant-appellant, Cadle Company II, Inc. ("Cadle Co."), was later assigned the rights to this judgment.

Also at this time, Patterson fell behind in his lease payments to DeVille and was forced to vacate the premises. Prior to Patterson's relinquishment of the property at the end of May 1985, he reaffirmed in writing that $49,283.91 was due and owing under the lease.

In an attempt to save the operations, the parties executed an "amendment to shopping center lease agreement" on June 1, 1985, with the express purpose to "provide for a different and more suitable space for Lessee" within the mall. The writing does not expressly purport to terminate the original lease agreement nor relieve Patterson of his outstanding liabilities under it.

While Patterson apparently was able to make his payments to DeVille under the new agreement for some time, his overall situation continued to deteriorate. On October 2, 1986, TransOhio Savings Bank, F.S.B. ("TransOhio") instigated the foreclosure action against Patterson's residence from which this appeal arises. Patterson was forced to declare bankruptcy and was eventually granted a discharge of debts. By entry of the bankruptcy court, the residence was abandoned to creditors asserting a claim in it.

The property was subsequently sold and TransOhio's mortgage lien satisfied from the proceeds. The court declined to further apportion the remaining balance of $19,961.20, and deferred to the trial court. In a written judgment order, the trial judge determined that DeVille held a superior lien as against Cadle Co. and was entitled to the remaining proceeds from the foreclosure sale. Cadle Co. now appeals this decision.

As an initial matter, Cadle Co. has not presented this court with an express assignment of error designating specific rulings which are now challenged on

appeal. While this blatant omission would allow us to simply ignore the appellant's brief pursuant to App.R. 12(A), we have attempted instead to discern from the argument what those error(s) would be. See *Hague v. Saltsman* (May 10, 1989), Summit App. No. 13883, unreported, 1989 WL 50691.

The crux of Cadle Co.'s position is that the agreement of June 1, 1990 is a new lease and not simply a modification of the old one. Somehow this distinction, the theory goes, results in the original bargained-for and recorded security agreement being wiped out, allowing Cadle Co.'s after-acquired lien to take priority. We are not convinced.

Regardless of whether the June 1, 1985 agreement was a new lease or simply an amendment of the old one, it does not—in any sense—express an intention between the parties to relieve Patterson of the $49,283.91 owing from the first lease. As stated in *Riegel v. Belt* (1928), 119 Ohio St. 369, 164 N.E. 347, paragraph three of the syllabus:

"The purpose of a mortgage is to secure the payment of a debt. A note described in the condition of a mortgage is only evidence of the debt. No change in the form of the evidence, or the mode or time of payment, not amounting to actual payment of the debt, or an express release, will operate to discharge the mortgage."

DeVille would have lost his priority status to Cadle Co. only if the original secured debt was cancelled or paid in full. *Zimpher v. Schwartz* (1940), 64 Ohio App. 7, 17 O.O. 308, 27 N.E.2d 499. Neither of these events occurred in this case. Therefore, at the very least, DeVille had a claim against Patterson for $49,283.91 secured by the mortgage of the residence. This lien was duly recorded prior to that of Cadle Co. and is therefore entitled to priority.

Cadle Co.'s brief goes awry on a number of tangents. Its initial citation to *Klein v. Clark* (C.P.1955), 73 Ohio Law Abs. 130, 59 O.O. 286, 135 N.E.2d 85, is misplaced since that case concerned a prior mortgage which had been paid in full and released. The underlying obligation involved here, in contrast, remains intact.

Furthermore, the doctrine of accord and satisfaction is completely inapplicable in the case *sub judice*. There is no evidence whatsoever exhibiting an intention on the part of DeVille to accept a lesser amount in settlement of the obligations outstanding under the original lease. See *State, ex rel. Shady Acres Nursing Home, Inc., v. Rhodes* (1983), 7 Ohio St.3d 7, 8, 7 OBR 318, 319, 455 N.E.2d 489, 490.

We thus conclude that even if the original lease was terminated on June 1, 1985—and we are not at all sure that it was—Patterson still owed DeVille

$49,283.91 in back lease payments. This debt was secured by the mortgage of Patterson's residence which was recorded ahead of Cadle Co.'s certificate of judgment. There is no evidence that this arrearage was paid or discharged. As a prior perfected secured creditor, DeVille is entitled to the entire $19,-961.20 remaining from the foreclosure sale of the property. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*

REECE, P.J., and CIRIGLIANO, J., concur.