**CANTON MORRIS PLAN BANK v MOST et**

Ohio Appeals, 5th Dist, Stark Co

Decided Nov 16, 1932

Fisher, Leahy & Weintraub, Canton, for appellant.

Black, McCuskey, Ruff & Souers, Canton, A. B. Arbaugh, Canton, J. J. McCall, Canton, Frank B. Melchoir, Canton, Rogers & Wendling, J. H. Emsley, Canton, Gregory Schott, Russell J. Van Nostran, Canton, John E. Sponseller, J. B. Snyder, Canton, and Gordon J. Burris, for appellees.

SHERICK, PJ.

The issues presented are two in number, the first being, Is the appellant, as assignee of the bank's second mortgage, entitled to be subrogated to and placed in the position of the bank, first held by its canceled first mortgage, and the second issue being, Is the appellant entitled to subrogation for the balance of the $10,500 paid by Most to workmen and materialmen for labor performed and materials furnished in the construction of the buildings, for which liens were not taken, and further entitled to share with the mechanics' lienholders, appellees herein, in the distribution of this excess?

The insurance company tacitly admits in its pleadings, and now frankly so, that it cannot claim priority over the mechanics' liens by virtue of its second mortgage, because it is not a construction mortgage and the bank did not comply with the provisions of §8321-1, GC. It recognizes that §8321, GC precludes it, for it provides that mechanics' liens "shall be preferred to all other * * * liens * * * which shall either be given or recorded subsequent to the commencement of said construction." The force of this section is fully upheld in **Rider v Crobaugh, 100 Oh St, 88, 125 NE, 130**, and by this court in **West Side Lumber & Mfg. Co. v Lancaster Paper Mill Co., 5 Oh Ap, 253**. From this point on we shall treat the appellant as if it were the bank, for it, the insurance company, can have no greater right than the bank, in whose shoes it now stands.

Counsel say that there is no reported decision in this state of a parallel case that should control in a solution of the first question presented, but both sides advance practically the same Ohio authorities in support of the various rules of equity respectively contended for. We shall not engage in an analysis and differentiation of these cases, but will direct attention to such announced principles therein as we deem applicable to the present situation. Counsel further say that the second question is one of first impression in this state, and cite no authority for our guidance.

We choose first to remark that equity in the granting of relief by subrogation is largely concerned with and rests its interference,

when called upon, on the prevention of frauds and relief against mistakes, and it is correctly stated that the right to it depends upon the facts and circumstances of each particular case. There is no question of fraud in this action; hence the issue is narrowed to a consideration of the question of mistake.

It may be stated as a general proposition that cancellation of a mortgage on the record is not conclusive as to its discharge or payment of the indebtedness for which it is given to secure, and, if it is done, and contemporaneous therewith a new mortgage is taken, the mortgagee will not be held to have subordinated his security to intervening liens, unless this was his intention. This rule is, of course, subject to the limitation that it may not be invoked and applied to work injustice or defeat a legal right or an intervening greater or equal equity.

Our search advises us that numerous states follow this rule, if the senior mortgage is discharged in ignorance of an intervening lien, even if such lien is of record. Such was the holding of this court in the case of **Harter Bank v Cooper, 11 Ohio Law Abs, 300, 35 OLR, 657,** in which this court followed **Amick v Woodworth, 58 Oh St 86, 50 NE 437,** and **Straman, Admr. v Rechtine, 58 Oh St 443, 51 NE, 44.** See also **Coshocton Natl. Bank v Hagans, 40 Oh Ap, 190 (10 Abs 203), 173 NE, 330.** This court has likewise approved of the limitation of this rule and has refused subrogation where such prejudiced the rights of intervening lienholders. See **Union Trust Co. v Lessovitz, 8 Ohio Law Abs, 235, 31 OLR, 451.**

A careful reading of the Amick and Straman cases, supra, convinces us, however, that our Supreme Court places considerable stress on the question of notice as it may affect the right to subrogation. It refers in these cases frequently to the necessity of "notice" and "lack of knowledge" in the party seeking relief, so that we believe that that court has in fact adopted and approved of the further general rule found stated in 33 A.L.R., 157, that: "Where an existing lien has been discharged by the holder and a renewal lien taken in ignorance of intervening lien against the property, the mortgagee will be regarded as acting under such a mistake of fact as to entitle him to relief by a restoration of his priority, if the rights of innocent parties are not involved."

Now, examining the facts before us in the light of the rules, we must conclude that the appellant's assignor was not in ignorance. It had full knowledge that workmen and materialmen were performing labor and furnishing material toward the erection and completion of buildings on the premises upon which it had a lien. The bank, knowing, let these artisans and supply men enhance the value of the premises. It permitted them to increase their equities therein. They changed their rights to such an extent that a decree allowing subrogation would imperil and prejudice their rights. All this the bank well knew. It also must be held to have known that it could have protected itself had it complied with §8321-1, GC, which it did not choose to do, but would now excuse with the averred fact that certain artisans and materialmen were preferred by Most's disbursements and paid in full; but by these payments the appellees did not profit.

But there is a far more cogent reason why subrogation should not here be allowed. As set forth in the notes appearing in 58 L.R.A., 805, and 33 A.L.R., 157, the general rule almost universally followed, unless joined with fraud or other circumstances demanding relief, such as mistake of fact or want of consideration, is that, "while the release of a mortgage may be set aside on the ground of mistake of fact, as, for example, that the mortgagee did not know of the existence of other liens upon the land when he released a first mortgage and took a new mortgage thereon, he cannot be relieved on the ground of a mistake of law as to the priority of the second mortgage he takes over liens which were subsequent to his original mortgage, but which will be prior to the new mortgage." 33 A.L.R., 160. And see numerous cases cited suporting this rule.

The bank did not mistake a fact; it mistook the law's provision. It was agreed between it and Most, of which the lienholders had no notice or knowledge, that it should have a first lien by the second mortgage. It disregarded the plain mandate of §8321, GC. It misunderstood this law's provision; and, since subrogation is a creature of equity, it must not be decreed where the legal rights of others are fixed by positive special statutes. The law would be nullified thereby. It must be remembered that equity follows the law and does not supersede it. See 25 Ruling Case Law, 1321.

And now, considering the second question presented, we first note that the bank and Most had no agreement that the balance of the second mortgage should be paid by Most to laborers and materialmen, and there is no allegation pleaded or fact stipulated from which it can be implied that it was the intention of the bank and Most that the

bank was to have security of dignity and position equal to that of the claims of those whose right to a lien were discharged by Most; hence there could be no conventional subrogation.

On the other hand, there is no legal right to subrogation here shown. The bank was under no legal obligation to pay the discharged mechanics and materialmen; that was the duty imposed by the law on Most. Further, we are unable to see that the bank had any interest to conserve. Its $6,000 mortgage was a valid first lien. It had no interest subsequent to the mechanics and materialmen which it sought to protect. It did not legally seek to protect its future advance to the debtor, Most, other than by the second note and mortgage, or as against intervening lienholders, which it could have done by compliance with §8321-1, GC. But it was content to rely on Most and its misunderstanding of the law. It now asks this, a court of equity, to rectify its position, entered into by its own carelessness.

Some eleven jurisdictions support the rule stated in 74 A.L.R., 525, wherein it is said: "A third party who, being under no obligation to do so and having no interest to conserve by so doing, pays the claims of laborers or materialmen, to secure which liens exist in favor of the latter, or lends or advances money or credit to the debtor for the payment of such claims, is not subrogated to the rights of the laborers or materialmen with respect to such liens, in the absence of an agreement for subrogation, or at least of an intention of the parties, clearly shown by the attendant circumstances, that the party making the payment or advance shall succeed to the rights of the laborers or materialmen."

It is further said in the same note, at page 527, that "The foregoing principles are especially applicable where the laborers' lien to which subrogation is asserted had not been filed and perfected at the time the payment or advancement was made, the right to the lien not being even assignable until the lien is established as provided by statute." And it is held in **City of Hamilton v Stilwaugh, 5 C.D., 324, 11 C.C., 182,** that the right to a mechanic's lien is a personal right, and is not assignable.

We would conclude our answer to the second query by quoting the last paragraph of the syllabus of Fidelity Insurance, Trust & Safe Deposit Co. v Shenandoah Valley Rd. Co., 86 Va., 1, 9 SE, 759, as the same is reported in 19 Am. St. Rep., 858: "Subrogation is an Equitable Remedy, allowed only when it does not conflict with the legal or equitable rights of other creditors of the common debtor. If moneys are loaned to a railway corporation in the ordinary course of business, and without any agreement as to the use to be made of them, and they are afterwards paid out to laborers and supply-men, after which the corporation goes into the hands of a receiver, the persons making such loans are not entitled to be subrogated to the claims paid with the moneys loaned, as against mortgagees of the corporation." This situation is analogous to the one now before us. We see no clear right established in the applicant to subrogation in this action, and it is therefore ordered that a decree be entered in this court such as that entered in the court below.

Decree accordingly.

LEMERT and MONTGOMERY, JJ, concur.