In re BRAKER.

HYDE PARK LUMBER CO. v. WEST NOR-
WOOD BUILDING & LOAN CO. et al.

No. 8920.

Circuit Court of Appeals, Sixth Circuit.

April 16, 1942.

W. C. Kelly, of Cincinnati, Ohio (Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellant.

Edward C. Hauer, of Cincinnati, Ohio (Hauer & Topmoeller, of Cincinnati, Ohio, on the brief), for appellee West Norwood Bldg. & Loan Co.

Lester Butterworth, of Cincinnati, Ohio (Lester Butterworth, of Cincinnati, Ohio, on the brief), for appellee Huber Bros.

Louis R. Schear, of Cincinnati, Ohio, for appellee Samuel S. Davies, trustee.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from an order approving and confirming an order of distribution in a bankruptcy proceeding. On the merits the principal question is whether a mortgage which does not contain a covenant authorizing the mortgagee to pay materialmen and laborers and otherwise comply with the provisions of Section 8321-1, General Code of Ohio, entitles the mortgagee in bankruptcy proceedings to share in the proceeds of a sale of the mortgaged property on an equal basis with mechanic's lien claimants to the extent that proceeds of the mortgage are used to pay for labor performed upon and material furnished for the construction of a building upon the property when the mortgage is recorded subsequent to the date upon which the labor was first performed and the materials were first delivered.

Before disposing of the merits, however, we consider a motion to dismiss the appeal filed by the trustee in bankruptcy. The decisions relied upon [Cf. Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184], to the effect that creditors may appeal from an order allowing claims in a bankruptcy case only following the refusal of the trustee to appeal and with the permission of the District Court, were decided prior to the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and apply to appeals filed by general creditors. They are based upon the proposition that the trustee represents the creditors, and therefore is the proper party to appeal. While it is conceivable that the trustee at times might be united in interest with secured creditors [Cf. Currin v. Nourse, 8 Cir., 66 Fed.2d 137, 138], in the instant case the trustee is plainly adverse to the interest of appellant, which is a secured creditor. Hence the reason for the rule obtaining as to general creditors does not here exist. In re Roche, 5 Cir., 101 F. 956, 958, held that a secured creditor could appeal as of right from an order allowing a claim for attorneys' fees. Cf. McDaniel v. Stroud, 4 Cir., 106 F. 486, 489. Foreman v. Burleigh, 1 Cir., 109 F. 313, and Amick v. Mortgage Security Corp., 8 Cir., 30 F.2d 359, each of which decisions denied the right of a general creditor to appeal except upon permission granted by the District Court, distinguish the Roche case upon the ground that in that case the creditor had a special lien on the funds in the hands of the trustee. Fred Reuping Leather Co. v. Fort Greene National Bank, 3 Cir., 102 F.2d 372, stated that the question involved was whether a "general creditor" had standing to prosecute an appeal without having secured permission from the court. We conclude that the decisions relied upon by appellees do not preclude a direct appeal by a secured creditor.

Also we think that under the new Rules of Civil Procedure a secured creditor is entitled to appeal in bankruptcy proceedings from an order of distribution which substantially reduces his recovery. As pointed out in Coursey v. International Harvester Co., 10 Cir., 109 F.2d 774, 777, except where the amount involved is less than $500, appeals in bankruptcy are gov-

erned by the new rules. This is the specific provision of General Order in Bankruptcy 36, 11 U.S.C.A. following section 53. Rule 74 of the Federal Rules of Civil Procedure provides that "without summons and severance" any one or more "parties interested" may appeal separately, or any two or more of them may join in an appeal. Appellant here is plainly interested in the judgment. It contends that since the mortgage of appellee West Norwood Building and Loan Company was recorded subsequent to the institution of construction upon the mortgaged property, the order permitting the building and loan company to share pro rata with mechanic's lienors in the distribution is clearly erroneous. Appellant holds a properly perfected mechanic's lien upon the property of the debtor, which if its appeal succeeds will be paid approximately in full. Under the present order of distribution only 59% of its claim will be satisfied. The only prerequisite for appeal under the Rules of Civil Procedure is the filing of a notice of appeal, and this notice was filed. As the appeal was taken in accordance with the new rules, and the amount involved is more than $500, the motion to dismiss must be denied. Coursey v. International Harvester Co., supra.

■ The mechanic's liens involved were properly perfected and under Ohio law they are superior to the mortgage subsequently recorded (Rider v. Crobaugh, 100 Ohio St. 88, 125 N.E. 130) unless the peculiar facts of the case require the application of the doctrine of equitable subrogation.

The bankrupt, Rose Braker, alias Edna Brinker, wife of Elmer Braker, alias Brinker, together with her husband borrowed some $2,400 of appellee West Norwood Building and Loan Company, to secure which they executed a mortgage upon real property in Hamilton County, Ohio, which was recorded May 13, 1938, several months after the construction of a house thereon had been begun. $1,993.33 of the amount thus obtained was paid out to materialmen and laborers, including the appellant, upon affidavits executed by the mechanic's lienors. Cf. Sections 8313 and 8320, General Code of Ohio. The mortgagee was the only claimant who was not aware that Brinker's real name was Braker; that he and his wife were subject to a judgment arising out of a transaction with another building and loan company, and that the property was put in the wife's name and under an alias in order that, as Braker said, it might be kept "free from judgments" so that his creditors "might not stop" him "from working." The referee and the District Court concurred in a finding that the Brakers had neither money nor credit except as the money came from the building and loan company, and that all of those who filed mechanic's liens got money on account of their claims from "the only source that money could come from—the building and loan company." The referee and the District Court also concurred in a finding that the execution of the affidavits upon which payment was made by the appellee building and loan company acquainted not only the Brakers, but also the recipients of the funds, with the facts as to the nature of the payments. It was concluded as a matter of law that the building and loan company was subrogated to the extent of such payments to the rights of laborers and materialmen and that the date of the mortgage was of no consequence in considering the right of the mortgagee to participate in the fund.

■ We think this conclusion is erroneous. Since the validity and extent of existing liens upon the real property of the bankrupt are to be determined by state law (Ex parte Christy, 3 How. 292, 44 U.S. 292, 11 L.Ed. 603; Nugent v. Boyd, 3 How. 426, 44 U.S. 426, 11 L.Ed. 664; Egyptian Supply Co. v. Boyd, 6 Cir., 117 F.2d 608, 611), and also since the question involves the construction of an Ohio statute, it is governed by Ohio law. This rule was in effect long before the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and is not modified either by that decision or by the recent holding of the Supreme Court in D'Oench, Duhme & Co., Inc., v. Federal Deposit Ins. Corp., 62 S.Ct. 676, 86 L.Ed. —, decided March 2, 1942.

Under Section 8321-1, General Code of Ohio, since the proceeds of the mortgage were given in part to improve real estate and actually used in such improvement, the mortgagee could have secured complete protection by embodying in the mortgage a covenant between itself and the Brakers authorizing and empowering the mortgagee to pay the materialmen and laborers and otherwise complying with the provisions of this section. This would have given it priority under the statute over all mechanics and materialmen to the extent of

the proceeds of the mortgage applied to these claims. The mortgagee failed to take this action.

 The referee concluded that nevertheless the mortgagee was entitled under the doctrine of subrogation to share equally with the mechanic's lien claimants. Since there was no agreement among the parties concerned that the mortgagee was to be subrogated, this holding necessarily depended upon an application of the doctrine of subrogation by operation of law. In Ohio this doctrine is applied for the relief of one who in the discharge of his own liability pays an obligation upon which another is liable where circumstances of fraud or mistake of fact exist, and such subrogation will not add to the burdens of the creditors. Canton Morris Plan Bank v. Most, 44 Ohio App. 180, 184 N.E. 765; Union Trust Co. v. Lessovitz, 51 Ohio App. 69, 199 N.E. 614; Straman, Adm'r, v. Rechtine, 58 Ohio St. 443, 51 N.E. 44. Cf. Federal Union Life Ins. Co. v. Deitsch, 127 Ohio St. 505, 189 N.E. 440.

In North Shaker Boulevard Co. v. Harriman National Bank, 22 Ohio App. 487, 153 N.E. 909, which likewise involved application of the Ohio statutes relating to mechanic's liens, a mortgagee was given a preference in the debtor's property over those asserting mechanic's liens claimed to antedate the mortgage. In that case, however, an active deception was practiced by the mechanic's lien claimants, who removed steam shovels from the construction project with the cooperation of the owner, in order to create an appearance of total absence of construction so that the mortgagee would loan funds to be used for material and labor. In the instant case no misrepresentation or fraud on the part of the other lien claimants is shown; it does not appear that they knew that the mortgagee was unaware of the Brakers' past record; in fact they might rightly expect the mortgagee to investigate the credit of the Brakers and to secure itself accordingly.

 The fact that the mortgagee was unaware of the bankrupt's lack of credit does not give rise to the right of subrogation. The case falls squarely within the doctrine of Canton Morris Plan Bank v. Most, supra, in which it was held that since the assignor of a mortgage recorded after the beginning of construction knew that the construction was in progress and was chargeable with knowledge that Sec-

tion 8321-1 afforded opportunity for securing priority over mechanic's liens, no relief could be given. To the same effect is Zimpher v. Schwartz, 64 Ohio App. 7, 27 N.E.2d 499. Here, as in those two cases, the work giving rise to the mechanic's liens was continually and visibly in progress before the mortgage was recorded. Equity will not disregard the terms of the statute to avoid the consequences of the mortgagee's own carelessness, and the fundamental rule announced in Rider v. Crobaugh, supra, is applicable. This conclusion requires reversal of the order upon this feature of the case.

 Appellant also attacks the mechanic's lien claim of Huber Brothers, materialmen who furnished certain supplies for the construction. It suffices to say that this contention raises a question of fact upon which we are concluded by the finding of the referee, concurred in by the District Court, unless there is a showing of clear mistake. No such showing has been made.

The order appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion. Appellee West Norwood Building and Loan Company is ordered to pay two-thirds and appellant is ordered to pay one-third of the costs on appeal.