OPINION
Appellant, Tower City Title Agency, LLC, appeals from the judgment of the Willoughby Municipal Court, denying appellant recovery of $1,000 from appellees, Richard A. and Michelle Flaisman.
On July 9, 1997, appellees refinanced their home with Allied Mortgage Capital Corporation. Appellant served as the escrow agent on the transaction. As part of the transaction, the original mortgage, which was held by The Money Store, had to be satisfied. On July 14, 1997, appellant sent The Money Store a check in the amount of $58,347.08. However, the total due to satisfy the original mortgage was $59,347.08. The Money Store notified appellant of its error, and appellant forwarded an additional check in the amount of $1,000 to The Money Store on July 29, 1997. In the meantime, it appears from the record before us that appellees received a disbursement from the refinancing in the amount of $4,620.05 some time on or after July 14, 1997. Apparently, this disbursement was $1,000 greater than it should have been due to the underpayment to The Money Store.
Once appellant learned of its error, it immediately contacted appellees. Appellant's attorney sent appellees letters on July 29, 1997, August 11, 1997, and October 30, 1997, requesting payment in full of the $1,000, or payments of $100 per month.
On September 21, 1999, appellant filed an action in the small claims division of the Willoughby Municipal Court. A hearing was held before Magistrate Michael Murray ("Magistrate Murray") on October 18, 1999. At that hearing, appellees, who were not represented by an attorney, testified that they owed appellant the $1,000, and that they intended to pay the debt, but they were unable to pay more than $20 per month. Appellant's attorney responded by requesting payments of $50 per month, without interest. Magistrate Murray encouraged the parties to settle the matter and gave appellant's attorney forty-five days to brief the issue.
A second hearing was held on December 13, 1999. Appellant's attorney stated that appellant would accept payments of $25 per month. Appellees, who were also represented by an attorney whom they had hired that morning, declined to accept a payment plan of $25 per month. Magistrate Murray continued the case and gave appellees forty-five days to brief the issue.
A third hearing was held on January 31, 2000, at which appellees failed to appear. Magistrate Murray indicated to appellant's attorney that he would take the matter under advisement and no further action was taken at that hearing. He subsequently filed a decision on February 23, 2000, in which he recommended that judgment be entered for appellees on the complaint. The trial court adopted his decision and entered judgment for appellees on February 25, 2000.
Appellant has filed a timely appeal and raises the following assignments of error:
 "[1.] The trial court erred in denying [appellant] the use of the theories of unjust enrichment and equitable subrogation, when [appellant] was clearly an involuntary payee (sic), and only made a mere clerical error.
 "[2.] The trial court erred, in that its ruling was against the manifest weight of the evidence presented on the briefs, and transcribed at the hearings held, when [appellees] specifically acknowledged the validity of the debt, in open court, and where [appellees] suffered no material harm from the error, while [appellant] was immediately harmed."
 We will treat the two assignments of error in a consolidated manner since the crux of the matter is whether appellant is entitled to recover the $1,000 from appellees under the theory of equitable subrogation. Appellant contends that appellees were unjustly enriched by the events that transpired in that not only did appellees receive $1,000 that was, in fact, owed to The Money Store, but appellant made up the shortfall on appellees' obligation to The Money Store. Appellant concludes that as a result of this unjust enrichment of appellees, appellant is entitled to relief through equitable subrogation. We agree.
Subrogation is the "substitution of one person in the place of another with reference to a lawful claim or right." Fed. Home Loan Mtge. Corp.v. Moore (Sept. 27, 1990), Franklin App. No. 90AP-546, unreported, at 2, 1990 WL 140556. The issue of equitable subrogation arises when there is no agreement creating a contractual obligation to subrogate. Id. The seminal Ohio case on equitable subrogation is State Dept. of Taxation v.Jones (1980), 61 Ohio St.2d 99. The Jones court cited Fed. Union LifeIns. Co. v. Deitsch (1934), 127 Ohio St. 505, 510, for the proposition that equitable subrogation "` (* * *) arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another that he is in equity entitled to the security or obligation held by the creditor whom he has paid.'"
The Jones court further noted that "`* * * equity in the granting of relief by subrogation is largely concerned with and rests its interference, when called upon, on the prevention of frauds and relief against mistakes * * *.'" Jones at 102, quoting Canton Morris Plan Bankv. Most (1932), 44 Ohio App. 180, 184. The record in the instant case indicates that appellant made a clerical error, resulting in a payment to appellees which was $1,000 in excess of the amount appellees were contractually entitled to receive. This $1,000 was owed to The Money Store. Appellant made up the shortfall in the payment to The Money Store, and then attempted to arrange a payment plan with appellees to recover the $1,000. There was no apparent detriment to appellees at any time. They, in effect, received a $1,000 interest-free loan from appellant. In light of the foregoing facts, this court is of the opinion that this is an appropriate case for the application of the principles of unjust enrichment and equitable subrogation to relieve a party from a mistake.
Appellees rely on Jones for the assertion that where one's own negligence precipitates a loss, a court may decline to apply equitable subrogation. However, the facts of this case are readily distinguished from Jones. In Jones, the appellant, Cleveland Federal Savings Loan Association of Cuyahoga County ("Cleveland Federal") financed a second mortgage for the appellees. Jones at 99-100. The second mortgage was executed on September 21, 1976, but was not filed until December 29, 1976. Id. On October 19, 1976, the state of Ohio, Department of Taxation filed a certificate of judgment lien in the amount of $70,000. Id. at 100. The court refused to allow Cleveland Federal to avail itself of the theory of equitable subrogation to obtain priority over the state's certificate of judgment.
In its decision, the court noted that the executed mortgage was not filed for three months; Cleveland Federal had cancelled its own first mortgage without first having received a title guarantee; and, Cleveland Federal was aware of debts the appellees had to an accounting firm and the Internal Revenue Service, but did not inquire if they had any additional obligations. Id. at 103. Furthermore, the state would have been harmed by losing priority on its lien. Therefore, the court refused to invoke the doctrine of equitable subrogation in view of Cleveland Federal's negligence.
In the instant case, there is no innocent third party, which would be harmed by the application of equitable subrogation. The Money Store has received all the monies it is due. Appellees have received an extra $1,000 to which they were not contractually entitled, and appellant is $1,000 short.
In Fed. Home Loan Mtge. Corp., supra, unreported, the Tenth District applied the doctrine of equitable subrogation when Diamond Savings Loan Association lost first priority position on a mortgage due to a mistake in a title search. The court noted "any negligence * * * was immaterial because no one was misled or injured thereby. * * * No one changed their position in reliance on the mistake, and there was no prejudice to subsequent intervening rights which could cause a court to regard [the] negligence as significant." Id. at 3. Similarly, in this case, appellees have received a $1,000 windfall. While this has created a significant inconvenience for them, there was no substantial harm necessarily resulting from appellant's mistake.[1]
While appellees take the position in their appellate brief that equitable subrogation is not appropriate in this case, because the overpayment to appellees was a mistake on the part of appellant, one of the two clearly identified purposes of equitable subrogation is to provide relief from mistakes. Huntington Natl. Bank v. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144, unreported, at 2, 1997 WL 67714. Therefore, we reject appellees' suggestion that a mistake on the part of appellant is sufficient grounds to deny appellant recovery under the theory of equitable subrogation.
For the foregoing reasons, the judgment of the Willoughby Municipal Court is
reversed, and this matter is remanded for further proceedings consistent with this opinion.
____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] Obviously, at this point, appellees have incurred attorney fees. While this is regrettable, it was not inevitable. At a hearing before a magistrate, appellees rejected appellant's offer of a payment plan of $50 per month.