OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Pan American Bank, FSB, appeals from a final judgment of the Portage County Court of Common Pleas granting appellee, Associates Financial Services Corporation, summary judgment. For the following reasons, we affirm the judgment of the trial court.
On September 13, 1993, Thomas Summer ("Summer") conveyed property located at 3429 Pioneer Trail, Mantua, Ohio, to Michael and Cynthia Miller ("the Millers"). The Millers subsequently granted a mortgage on the property to appellee in the amount of $123,326.80 on May 14, 1996.
On September 12, 1997, Summer filed a complaint to regain title, claiming that the Millers had fraudulently acquired the property from him. The case was resolved when a consent judgment entry was filed on March 13, 1998, in which the Millers were ordered to transfer title back to Summer.
After regaining title, Summer obtained a loan from appellant, which was secured by a mortgage on the property. The record shows that a portion of the loan proceeds was used to extinguish two other mortgages given by Summer to Huntington National Bank ("Huntington National") and Cortland Savings and Banking Company ("Cortland Savings") in 1991 prior to transferring the property to the Millers.[1]
When the Millers defaulted on their mortgage payments, appellee filed a complaint in the Portage County Court of Common Pleas seeking to foreclose on the property. In addition to the Millers, appellee also named Summer, Jane Doe (Summer's unknown spouse), Cortland Savings, appellant, and the State of Ohio, Department of Taxation, as defendants.[2]
Appellant filed an answer on April 11, 2000, denying the allegations in the complaint. On August 21, 2000, appellee filed a motion for summary judgment arguing that there was no genuine issue of material fact, and that the company was entitled to judgment as a matter of law.
In response, appellant filed an amended answer on September 15, 2000, in which it asserted a new claim for equitable subrogation. According to appellant, the loan given to Summer was to be secured with a mortgage replacing those already held by Huntington National and Cortland Savings. As a result, because the earlier mortgages were given prior to the one granted by the Millers to appellee, appellant believed that its mortgage interest was entitled to first priority.
On November 13, 2000, the trial court granted appellee's motion for summary judgment against Summer. Moreover, the court also dismissed the Millers, finding that the court lacked personal jurisdiction over the couple. As for the remaining defendants, the trial court concluded that their respective liens were not extinguished by the foreclosure action.
Both Summer and appellant filed motions for reconsideration from this judgment. Construing the motions for reconsideration as briefs in opposition to appellee's motion for summary judgment, the trial court issued a new judgment entry on March 15, 2001, affirming its earlier decision. In doing so, the trial court disagreed with Summer's argument that the consent judgment filed on March 13, 1998, effectively canceled appellee's mortgage on the property. Rather, the court concluded that because the mortgage predated both the filing of Summer's complaint and the consent judgment, appellee's mortgage was valid and enforceable.
As for appellant, the trial court held that equitable subrogation should not be used to relieve the company of its own errors. According to the trial court, appellant, who was in complete control of the lien search, escrow, and disbursement of the loan funds, "simply missed [appellee's] mortgage[,]" and neither Summer nor appellee "made any representation to [appellant] that its lien would be given priority."
From this judgment, appellant filed a timely notice of appeal with this court. Under its sole assignment of error, appellant argues that summary judgment should not have been granted because, pursuant to the facts and circumstances of this case, it was entitled to relief under the doctrine of equitable subrogation. We disagree.
At the outset, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc. (1993),67 Ohio St.3d 266, 268.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Dresher at 293.
If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. Id.
Generally speaking, "[s]ubrogation is the `substitution of one person in the place of another with reference to a lawful claim or right.'"Tower City Title Agency, LLC v. Flaisman (Apr. 20, 2001), Lake App. No. 2000-L-070, unreported, 2001 WL 409528, at 2, quoting Fed. Home LoanMtge. Corp. v. Moore (Sept. 27, 1990), Franklin App. No. 90AP-546, unreported, 1990 WL 140556, at 2. Unlike conventional subrogation, which is premised on the contractual obligations of the parties, equitable subrogation "`*** arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.'" Statev. Jones (1980), 61 Ohio St.2d 99, 102, quoting Fed. Union Life Ins. Co.v. Deitsch (1934), 127 Ohio St. 505, 510.
As the Supreme Court of Ohio noted in Jones, "*** equity in the granting of relief by subrogation is largely concerned with and rests its interference, when called upon, on the prevention of frauds and relief against mistakes, and it is correctly stated that the right to it depends upon the facts and circumstances of each particular case. ***" Jones at 102, quoting Canton Morris Plan Bank v. Most (1932), 44 Ohio App. 180,184. Accordingly, "[i]n order to entitle one to subrogation, his equity must be strong and his case clear." Jones at 102.
In Jones, Cleveland Federal Savings Loan Association of Cuyahoga County ("Cleveland Federal") agreed to refinance an earlier mortgage that had been given to the company by Bernard and Bonnie Jones ("the Jones"). Midland Title Security, Inc. ("Midland") conducted a preliminary title search of the subject property in August 1976 which only revealed Cleveland Federal's previous mortgage.
Shortly after this preliminary title search, the Internal Revenue Service filed a tax lien on the property on September 16, 1976. Four days later, Frank, Seringer Chaney, C.P.A., filed two certificates of judgment liens. Nevertheless, on September 21, 1976, Cleveland Federal executed a second mortgage on the property that was not filed until December 29, 1976.
Between the time of the execution and recording of the second mortgage, the State of Ohio, Department of Taxation, filed a certificate of judgment lien on the property. When Midland conducted an updated title search prior to the recording of the second mortgage, the company discovered the Internal Revenue Service tax lien and the two certificates of judgment liens. However, the state's tax lien was neither discovered nor reported to Cleveland Federal before the second mortgage was filed. As a result, Cleveland Federal only satisfied the three discovered liens and the company's own first mortgage.
When the state instituted foreclosure proceedings, Cleveland Federal was named as a defendant and maintained that its mortgage was entitled to priority over the state's tax lien through equitable subrogation. In rejecting this argument, the Supreme Court of Ohio observed that it was Cleveland Federal's "own actions [that] led to its dilemma of not obtaining the best priority lien." Jones at 102. According to the Court, because Cleveland Federal was in complete control of the refinancing application, the disbursement of the funds, the filling out of all the forms, the date of the filing, the hiring of the title company, and was aware of the debts to the Internal Revenue Service and the accounting firm, equitable subrogation would not be invoked to relieve Cleveland Federal from its "improvident business maneuvers."Id. at 103.
After considering the totality of the facts and circumstances in this case, we conclude that the trial court did not err in denying appellant's request for equitable subrogation. Clearly, when appellant's agent conducted the title search, it failed to discover appellee's preexisting mortgage. Furthermore, appellant was in complete control of the loan process, and there is no allegation that appellee acted fraudulently or otherwise tried to conceal its properly recorded mortgage from appellant.
Appellant argues that because appellee willingly accepted an inferior lien position when the Millers gave the company a mortgage on the property, it has now been unjustly enriched by appellant's satisfaction of the preexisting mortgages. However, simply because appellant's negligence provided a benefit to appellee does not necessarily mean that appellee was unjustly enriched. Instead, if equitable subrogation were applied in the instant matter, an innocent third party, appellee, would be harmed.
Equitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests. Leppo, Inc. v. Kiefer
(Jan. 31, 2001), Summit App. Nos. 20097 and 20105, unreported, 2001 Ohio App. LEXIS 293, at 6. As a result, appellant's sole assignment of error is not well-taken.
Based on the foregoing analysis, the judgment of the trial court is affirmed.
O'NEILL, P.J., NADER, J., concur.
[1] Although not relevant to this appeal, we would note that it is unclear how clean title to the property was passed between Summer and the Millers considering the existence of the prior mortgages.
[2] Despite the fact that Huntington National was a prior mortgage holder, appellee did not name the bank as a defendant.