OPINION
{¶ 1} This is an appeal by defendant-appellant, GMAC Mortgage Corporation ("GMAC"), from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, Keybank National Association, and denying appellant's motion for summary judgment.
 {¶ 2} In January 1996, Raymond and Janet Adams submitted a loan application to American Mortgage Solutions, Inc. ("AMS"), seeking to refinance their home, located at 6301 Little Deer Road, Columbus. The application listed a prior mortgage to "National Bank," with a balance due in the amount of $134,000. A final loan application, signed by Raymond and Janet Adams on February 23, 1996, noted a second mortgage in favor of "Society" in the amount of $29,426.
 {¶ 3} On January 29, 1996, a title insurance company conducted a title search of the subject property. The search revealed a first mortgage from Raymond and Janet Adams in favor of Society Mortgage Company, executed on October 26, 1992, for the amount of $143,000, and a second mortgage from Raymond and Janet Adams to Society National Back, executed on May 2, 1994, in the amount of $30,000. Appellee is the successor-in-interest to Society National Bank.
 {¶ 4} On February 23, 1996, Raymond and Janet Adams executed a new mortgage, in the amount of $139,800, in favor of AMS. GMAC is the successor-in-interest to AMS. According to the settlement statement, a portion of the proceeds was used to satisfy the first mortgage. At the time the mortgage was executed, Raymond Adams signed a "Name Affidavit," stating in part: "I understand we are subordinating the second mortgage with Society Bank." It is undisputed that AMS did not obtain a subordination agreement prior to the closing.
 {¶ 5} Raymond and Janet Adams subsequently defaulted on their loan obligation to appellee and, on August 30, 2001, appellee filed a complaint in foreclosure, naming as defendants Raymond and Janet Adams, GMAC, Phoenix Leasing, Inc., and the Franklin County Treasurer. Appellee sought judgment against Raymond and Janet Adams in the sum of $31,195.84, plus interest, and requested that its lien be decreed the first and best lien after real estate taxes.
 {¶ 6} On December 3, 2002, GMAC filed an answer, cross-claim and counterclaim. In its cross-claim and counterclaim, GMAC asserted that it was the holder of a note and mortgage filed March 8, 1996. GMAC sought judgment against Raymond and Janet Adams in the sum of $128,727.65, plus interest, and further sought to have its mortgage adjudged to be a valid first lien.
 {¶ 7} On March 11, 2002, appellee filed a motion for summary judgment against GMAC. In the accompanying memorandum in support, appellee argued that a review of the "Preliminary Judicial Report" indicated that appellee's mortgage was filed for record May 2, 1994, whereas the mortgage of GMAC was filed February 23, 1996.
 {¶ 8} On July 29, 2002, GMAC filed a brief in opposition to appellee's motion for summary judgment, as well as a cross-motion for summary judgment. GMAC asserted that it was entitled to summary judgment based upon the doctrine of equitable subrogation. Appellee filed a reply to GMAC's cross-motion for summary judgment, and also filed a motion for default judgment against Raymond and Janet Adams, which the trial court granted July 31, 2002.
 {¶ 9} On September 19, 2002, the trial court granted appellee's motion for summary judgment while denying GMAC's cross-motion for summary judgment. On October 23, 2002, the trial court entered an order for judgment and foreclosure and an order for sale.
 {¶ 10} GMAC has appealed from the trial court's decision granting summary judgment in favor of appellee and denying its motion for summary judgment, setting forth the following two assignments of error for review:
I. The trial court erred in granting summary judgment in favor of Keybank and denying summary judgment to GMAC.
II. The trial court erred in finding that GMAC was not entitled to equitable subrogation on the basis that GMAC failed to show that it was incapable of finding the Keybank mortgage.
 {¶ 11} GMAC's assignments of error are interrelated and will be considered together. In arguing that the trial court erred in granting summary judgment in favor of appellee, GMAC's primary contention is that it is entitled to a first lien against the property based upon the doctrine of equitable subrogation.
 {¶ 12} An appellate court reviews a grant of summary judgment de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390. Pursuant to Civ.R. 56(C), before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in its favor. State ex rel. Grady v. SERB
(1997), 78 Ohio St.3d 181, 183.
 {¶ 13} In general, subrogation is the "accession of a second party to rights held by another," and this can be accomplished by conventional subrogation, arising by either express or conventional subrogation, or by the doctrine of equitable or legal subrogation. Leppo, Inc. v. Kiefer
(Jan. 31, 2001), Summit App. No. 20097. In contrast to conventional subrogation, legal or equitable subrogation "`arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.'" State v. Jones (1980), 61 Ohio St.2d 99, 102, quotingFederal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505, 510.
 {¶ 14} In Jones, supra, at 102, the Ohio Supreme Court held that, "[i]n order to entitle one to subrogation, his equity must be strong and his case clear." Under the facts of Jones, the mortgagee, who "was in complete control of the refinancing application," failed to promptly record a mortgage, thereby allowing the state, through no fraudulent activity on its part, to file a lien between the time the mortgagee's loan was executed and recorded. Id. The mortgagee argued that it was entitled to priority over the state under the doctrine of equitable subrogation. The court in Jones refused to apply the doctrine, finding that "appellant's own actions led to its dilemma of not obtaining the best priority lien." Id.
 {¶ 15} At the outset, although GMAC's brief suggests a material dispute exists as to whether or not an agreement was reached between the parties providing for appellee to subordinate to GMAC, a review of the record does not support such a claim. We note that, during oral argument, counsel for GMAC acknowledged that it was proceeding on a theory of equitable subrogation as opposed to conventional subrogation.
 {¶ 16} GMAC argues that, under the facts of the instant case, the escrow agent had instructions from AMS that it was to be in first position, and that a subordination agreement needed to be filed. GMAC further argues that, while the title agent discovered the second mortgage in favor of appellee, for unknown reasons the title agency never received a subordination agreement from appellee. GMAC asserts that appellee is not entitled to first priority because it did not bargain for or give any consideration for such priority.
 {¶ 17} GMAC also contends that a case cited in the trial court's decision, First Union Natl. Bank v. Harmon, Franklin App. No. 02AP-77, 2002-Ohio-4446, supports GMAC's position that equitable subordination is applicable. In Harmon, the husband and wife refinanced an existing first mortgage, granting a mortgage to First Union National Bank's ("First Union") predecessor; with the proceeds, the Harmons extinguished obligations secured by two prior mortgages. In examining the title abstract, the title agency failed to discover a prior mortgage in favor of Beaver Plans, Inc. ("Beaver Plans"), recorded on March 25, 1998. At the time of that mortgage, Beaver Plans was "at best a second mortgage," subject to another lender's first mortgage. Id. at ¶ 21. The mortgage with First Union's predecessor was recorded April 24, 1998, and then assigned to First Union. The Harmons later defaulted on their obligation to First Union, and First Union brought a foreclosure action. Beaver Plans argued that it had priority because it recorded its mortgage before First Union's predecessor recorded its mortgage, while First Union maintained it was entitled to be subrogated to the rights of the prior lender, whose first mortgage was recorded prior to the time Beaver Plans recorded its mortgage. The trial court applied the doctrine of equitable subrogation and entered judgment in favor of First Union.
 {¶ 18} In Harmon, this court rejected Beaver Plans' contention that the trial court erred in applying the doctrine of equitable subrogation, finding that the facts were similar to those in Federal Home Loan Mtge.Corp. v. Moore (Sept. 27, 1990), Franklin App. No. 90AP-546, in which "this court applied the doctrine of equitable subrogation to enable Diamond Savings Loan ("Diamond") to prevail in priority over Fifth Third Bank ("Fifth Third"), even though Fifth Third's mortgage was recorded earlier in time." Harmon, supra, at ¶ 20. In relying uponFederal Home Loan Mtge. Corp., the Harmon court noted that Diamond's title insurance company mistakenly missed the mortgage from the borrowers to Fifth Third during a title search and, as a consequence, Diamond released its previous mortgages, thereby unexpectedly allowing Fifth Third to become the holder of a lien recorded first in time. Id.
 {¶ 19} Upon review, we find the facts of Harmon to be distinguishable from the instant case. In Harmon, due to a mistake on the part of the title agency, the lender was unaware of a problem with the title search until after the closing. In the instant case, it is undisputed that the title agency had discovered the second lien, and that the lender was also aware of the lien. Further, GMAC had knowledge that a subordination agreement was necessary in order for its mortgage to have priority over appellee's mortgage. Despite this fact, GMAC failed to ensure, prior to closing, that a subordination agreement was executed. Under these circumstances, we do not find the equities in the instant case to be as strong as in Harmon.
 {¶ 20} Rather, in the present case, we agree with the trial court that GMAC has "failed to show that it was incapable of discovering * * * [appellee's] priority lien or otherwise protect its own interests and has failed to demonstrate that its equity is 'strong' and its case 'clear.'" Ohio courts have held that, "[e]quitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests."Associates Financial Services Corp. v. Miller (Apr. 5, 2002), Portage App. No. 2001-P-0046. See, also, Bank of New York v. Fifth Third Bank ofCentral Ohio, Delaware App. No. 01 CAE 03005, 2002-Ohio-352 (appellant could have protected its priority interest position, prior to loaning borrowers $40,000, by insisting that it receive a copy of terminated equity line agreement but failed to do so; "when the secured party does not protect its own interest by insuring that the first loan is canceled before extending credit, this court will not invoke equity to compensate for shortcomings so easily avoided"); The Huntington Natl. Bank v.McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144 (where it was lender's responsibility to ensure that credit line was closed before it loaned money, lender's decision to rely on incorrect and uninformed assumption that bank had terminated credit line does not entitle it to advance to first lien position where it could have protected its own interest).
 {¶ 21} Based upon the foregoing, the trial court did not err in holding that the doctrine of equitable subrogation is inapplicable to the facts of this case. Accordingly, GMAC's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of appellee, is hereby affirmed.
Judgment affirmed.
Petree, P.J., and McCormac, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C)[NAF1], Article IV, Ohio Constitution.