OPINION
{¶ 1} Defendant-appellant, Countrywide Home Loans, appeals a decision of the *Page 2 
Butler County Court of Common Pleas denying its motion for summary judgment in a case involving property subject to a foreclosure action filed by plaintiff-appellee, Ford Homes, Inc. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} This case involves a dispute over the order of priority of liens on real property located at 7016 Southampton Lane, also known as 7016 Torrington Lane, in West Chester, Ohio ("the Property"). On April 14, 2005, Francis Bobie executed a contract with Ford Homes for the construction and purchase of a residence on the Property. Bobie delivered a promissory note and two construction mortgages to First Horizon Home Loan Corporation ("First Horizon") on or about July 6, 2005. That same day, First Horizon recorded the two construction mortgages with the Butler County recorder's office. The principal amounts of the two mortgages were $580,000 and $108,750, respectively.
 {¶ 3} On July 27, 2005, Ford Homes performed its first labor and/or furnished its first material in connection with the construction of the residence on the Property. After construction of the residence was completed, a certificate of occupancy was issued to Ford Homes on May 5, 2006. Bobie moved into the residence, but refused to pay Ford Homes the balance of the contract price. On May 9, 2006, Ford Homes recorded a mechanic's lien against the Property in the principal amount of $154,165.91 with the Butler County recorder's office.
 {¶ 4} On or about May 24, 2006, Bobie refinanced the First Horizon construction mortgages with Countrywide. Bobie delivered a promissory note and mortgage in the principal amount of $719,250 to Countrywide. Countrywide recorded the mortgage with the Butler County recorder's office on May 30, 2006. Countrywide does not dispute that its title agent, Title First Agency ("Title First"), identified Ford Homes' lien against the Property. Countrywide asserts, however, that Title First "made the mistake of not making the Countrywide's [sic] Note and Mortgage contingent on the release of Ford Homes' Mechanic's *Page 3 
Lien."
 {¶ 5} Also at the time of refinancing, Countrywide paid off Bobie's promissory note with First Horizon in the amount of $549,849.50. In addition, Countrywide submitted a payment of $162,250 to an entity called "Anderson Construction," on the order of Bobie. The company was established by Bobie to purportedly complete work on the Property. Anderson Construction issued an "invoice" to Bobie indicating that the amount would serve as a final payoff.
 {¶ 6} Also pertinent to this case, McSwain Carpets, Inc. ("McSwain") was a subcontractor employed by Ford Homes to install carpet and flooring. On April 21, 2006, McSwain performed its first labor and/or furnished its first material in connection with the construction of the residence on the Property. After the carpet and flooring installation was completed, Ford Homes did not pay McSwain for the services and materials provided. On September 19, 2006, McSwain recorded a mechanic's lien against the Property in the principal amount of $20,080.38 with the Butler County Recorder's Office.
 {¶ 7} On August 15, 2006, Ford Homes filed a complaint in foreclosure on the basis that Bobie failed to pay the full amount due under the contract between the two parties. Ford Homes' complaint asked that its lien be declared a first lien on the Property. Both McSwain's intervening complaint and Countrywide's answer to Ford Homes' complaint asked that their respective liens be declared a first lien on the Property. Ford Homes filed its initial motion for summary judgment on June 6, 2008, followed by an amended motion on June 13, 2008. Countrywide filed its summary judgment motion on June 30, 2008.
 {¶ 8} In a decision issued on August 15, 2008, the trial court denied Countrywide's summary judgment motion. The court's decision held that McSwain's lien was superior to *Page 4 
Ford Homes' lien, [1] and that Ford Homes' lien was superior to Countrywide's lien. In a decision that followed on August 21, 2008, the trial court granted Ford Homes' summary judgment motion.[2]
 {¶ 9} A trial court's decision on summary judgment is reviewed de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper when (1) there are no genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ. R. 56(C). See, also, Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact.Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these burdens in considering Countrywide's sole assignment of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DENIAL OF COUNTRYWIDE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 12} Countrywide argues that the trial court erred in denying its motion for summary judgment, presenting two issues for our review. First, Countrywide contends that its lien *Page 5 
should be found superior to the respective liens held by Ford Homes and McSwain under the doctrine of equitable subrogation. Countrywide contends that the doctrine should operate to elevate its lien to the prior lien position of First Horizon because Countrywide paid off the First Horizon mortgages and bargained for the superior lien position.
 {¶ 13} R.C. 5301.23 establishes the general rule regarding priority of mortgages. Under R.C. 5301.23(A), the first mortgage recorded "shall have preference." The doctrine of equitable subrogation, however, is sometimes applied by courts to overcome this statutory principle of "first in time, first in right." Chase Manhattan Bank v. Westin, Clermont App. No. CA2002-12-099, 2003-Ohio-5112, ¶ 8, citing First UnionNatl. Bank v. Harmon, Franklin App. No. 02AP-77, 2002-Ohio-4446, ¶ 17.
 {¶ 14} Subrogation generally substitutes one party in the place of another regarding the other's claim or right. State Dept. of Taxation v.Jones (1980), 61 Ohio St.2d 99, 100-101. Conventional subrogation focuses upon the contractual obligations of the parties, which compel a payor-creditor to be substituted for the creditor discharged by the payor's loan. Id. at 101. By contrast, legal (or equitable) subrogation arises by operation of law when one party pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. Fed. Union Life.Ins. Co. v. Deitsch (1934), 127 Ohio St. 505, 510.
 {¶ 15} Equitable subrogation is, essentially, a theory of unjust enrichment. Ridge Tool Company v. Silva (1986), 33 Ohio App.3d 260, 261. The doctrine of equitable subrogation serves to prevent fraud and to provide relief from mistakes. Jones at 102, quoting Canton Morris PlanBank v. Most (1932), 44 Ohio App. 180, 184. A party seeking to benefit from equitable subrogation must have strong equity and a clear case.Jones at 102, citing Harshman v. Harshman (App. 1941), 35 Ohio Law Abs. 633, 636. Whether or not a party is entitled to equitable subrogation depends upon the facts and circumstances of each case. *Page 6 Jones at 102, quoting Most at 184.
 {¶ 16} After thoroughly reviewing the record, we find that Countrywide is not entitled to first lien position on the basis of equitable subrogation. It is undisputed that Countrywide paid Anderson Construction the sum of $162,250. The settlement statement for Bobie's loan with Countrywide confirms that this sum was paid to Anderson Construction. Countrywide, the entity allocating disbursements out of the loan proceeds, was thus aware of and ratified this payment.
 {¶ 17} The sum paid to Anderson Construction was more than enough to satisfy Ford Homes' lien, which was duly recorded 21 days prior to Countrywide's mortgage and thereby made a public record readily discernable by Countrywide. The record does not indicate that Anderson Construction filed a mechanic's lien for sums allegedly due to the company. Countrywide negligently chose to pay the sum to an entity created by Bobie, at Bobie's direction, with what appears to be minimal investigation into the matter. Countrywide disbursed this sizeable sum to Bobie on the basis of an "invoice" essentially issued to Bobie by Bobie. The record appears to indicate that the invoice was supported by little more than Bobie's word. Under these circumstances, a large and sophisticated lender such as Countrywide should not be permitted to avoid the repercussions of such a negligent business transaction.Keybank Natl. Assn. v. GMAC Mtge. Corp., Franklin App. No. 02AP-1293,2003-Ohio-6651, ¶ 20. Countrywide was in the best position to protect its own interests and failed to do so. Id. See, also, Huntington Natl.Bank v. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144, at 5.
 {¶ 18} Likewise, Ford Homes should not be made to bear the consequences of Countrywide's negligent business transaction. There are no allegations that Ford Homes acted fraudulently or otherwise attempted to conceal its properly recorded lien from Countrywide. Assoc. FinancialServs. Corp. v. Miller, Portage App. No. 2001-P-0046, 2002-Ohio-1610, *Page 7 2002 WL 519667 at *3. Furthermore, Ford Homes would be harmed if Countrywide was equitably subrogated to first lien position. When Countrywide chose to pay Anderson Construction out of the proceeds from the refinance mortgage, Ford was left with an unpaid balance on its contract for the construction of the residence. Countrywide's $162, 250 payment to Anderson Construction reduced the equity available to Ford Homes in its foreclosure action against the Property.
 {¶ 19} As stated, a party seeking to benefit from the application of the doctrine of equitable subrogation must have strong equity and a clear case. Jones at 102. Under the facts and circumstances of this case, Countrywide has neither. The trial court thus properly concluded that Countrywide was not entitled to have its lien equitably subrogated to a position superior to Ford Homes' lien.
 {¶ 20} We next address the second issue raised by Countrywide under its first assignment of error. Countrywide maintains that its lien should be found superior to the respective liens held by Ford Homes and McSwain on the basis of R.C. 1311.14. Countrywide insists that it complied with the provisions of R.C. 1311.14, which affords priority to certain mortgage liens, and is therefore entitled to the protections provided by the statute.
 {¶ 21} Generally, a mortgage is subordinate to mechanic's liens that have an effective date preceding the date on which the mortgage was recorded. Guernsey Bank v. Milano Sports Ents., L.L.C,177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 56. Pursuant to R.C. 1311.13(A)(1):
 {¶ 22} "All liens under sections 1311.01 to 1311.22 of the Revised Code for labor or work performed or materials furnished to the same improvement prior to the recording of the notice of commencement pursuant to section 1311.04 of the Revised Code are effective from the date the first visible work or labor is performed or the first materials are furnished by the first original contractor, subcontractor, material supplier, or laborer to work, labor on, or *Page 8 
provide materials to the improvement."
 {¶ 23} The record does not indicate that Bobie recorded a notice of commencement prior to the visible performance of any labor or work or the furnishing of any materials in relation to the construction of the residence on the Property. Countrywide does not dispute that Ford Homes performed its first labor and/or furnished its first materials on July 27, 2005. Nor does Countrywide dispute that McSwain performed its first labor and/or furnished its first materials on April 21, 2006. As stated, Countrywide recorded its mortgage on May 30, 2006. Because Countrywide's mortgage became effective after the respective mechanic's liens held by Ford Homes and McSwain became effective, its mortgage is subordinate to the two mechanic's liens unless R.C. 1311.14 applies. See GuernseyBank at ¶ 56.
 {¶ 24} R.C. 1311.14, the construction mortgage statute, gives a construction mortgage priority over mechanic's liens although the mortgage was recorded subsequent to the effective date of the mechanic's liens. Guernsey Bank at ¶ 56-57. In pertinent part, R.C. 1311.14(A) provides the following:
 {¶ 25} "Except as provided in this section, the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in the improvement in the manner contemplated in sections 1311.02 and1311.03 of the Revised Code, or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, material supplier's, and similar liens and all liens provided for in this chapter that are filed for record after the improvement mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section."
 {¶ 26} Countrywide emphasizes the fact that it paid off the prior encumbrances *Page 9 
represented by the two First Horizon construction mortgages, asserting that it is entitled to be classified as a construction mortgagee so that its mortgage may be declared superior to the respective liens held by Ford Homes and McSwain. However, a mortgagee must substantially comply with the provisions of the construction mortgage statute in order to attain priority over prior recorded mechanic's liens. Highland SavingsAssn v. Clinton Constr. Co. (June 28, 1976), Clinton App. No. 311,1976 WL 189219 at *2. The statute specifies that a mortgage must contain "a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under [R.C. 1311.14]" in order to qualify as a construction mortgage.
 {¶ 27} Countrywide insists that its mortgage was in proper form and in compliance with R.C. 1311.14(A) because the mortgage included Bobie's correct name and address and "authorized Countrywide to do that which was necessary to protect the priority of Countrywide's mortgage." In seeking the benefit of R.C. 1311.14, Countrywide retains the burden to demonstrate its conformity with the mandates of the statue. Wayne Bldg. Loan Co. v. Yarborough (1967), 11 Ohio St.2d 195, 210.
 {¶ 28} Countrywide fails to support its bald assertion of compliance with R.C. 1311.14(A) by pointing to any language in the mortgage instrument that comprises the requisite covenant under the statute. Although the instrument contains language that permits Countrywide to undertake reasonable or appropriate actions to protect its security interest, we cannot discern any provision embodying the requisite covenant "authorizing the mortagee to do all things provided to be done by said mortgagee under [R.C. 1311.14.]"[3] *Page 10 
 {¶ 29} In the absence of substantial compliance with the provisions of R.C. 1311.14, "equity will not disregard the plain language of § 1311.14
to sidestep the consequences of the mortgagee's own carelessness in failing to follow the guidelines proscribed by law." In re QualstonCorp. (Bkrtcy.S.D.Ohio 2004), 310 B.R. 833, 841. Countrywide did not afford notice, by recitation of the covenant, identifying it as a construction mortgage. See In re Braker (C.A.6, 1942), 127 F.2d 652. As a result of its failure to comply with the formal requirements of R.C. 1311.14(A), Countrywide's mortgage is not entitled to priority under the statute. See id.
 {¶ 30} Countrywide's single assignment of error is overruled.
 {¶ 31} Judgment affirmed.
BRESSLER, P.J., and WALSH, J., concur.
[1] The trial court's August 15, 2008 decision denying Countrywide's motion for summary judgment referred back to the court's June 6, 2008 decision granting summary judgment to McSwain. McSwain had filed a motion for summary judgment on a breach of contract cross-claim raised against Ford Homes in McSwain's intervening complaint. The court's June 6, 2008 decision determined that Ford Homes owed McSwain $20,080.38 for the reasonable value of goods and services supplied to the Property.
[2] Although Countrywide's sole assignment of error does not argue that the trial court erred in granting summary judgment to Ford Homes, we note that the denial of Countrywide's motion for summary judgment is final as a result of the trial court's granting of summary judgment to Ford Homes. Countrywide's notice of appeal incorporates both the August 15, 2008 and August 21, 2008 trial court decisions.
[3] See, e.g., Connecticut Gen. Life Ins. Co. v. Birzer Bldg. Co.
(C.P. 1950), 61 Ohio Law Abs. 477, in which the mortgage stated: "And the mortgagor and mortgagee hereby covenant and agree that this mortgage is made in pursuance of, and subject to, the provisions of General Code Sections 8321 and 8321-1 and that the mortgagee is hereby authorized and empowered to do all things in said sections provided by the mortgagee to be done and that the proceeds of said mortgage will be disbursed by the mortgagee in accordance with the provisions of said sections." (General Code Section 8321-1 was the predecessor to R.C. 1311.14); KnollmanLumber Co. v. Hillenbrand (1940), 64 Ohio App. 549, in which the mortgage stated: "This mortgage is given to improve the premises herein described. The mortgagors hereby consent and agree with the mortgagee that the fund secured by this mortgage may be paid out by the mortgagee as provided in Section 8321-1 of the General Code of Ohio," and also "The grantee is authorized and empowered to do all things provided to be done by a mortgagee under Section 8321-1 of the General Code * * *"; andFirst Fed. S. L. Assn. of Cincinnati v. Robbins (1939), 34 Ohio Law Abs. 249, in which the mortgage stated: "This mortgage is given to acquire the premises herein described and/or to pay prior encumbrances thereon, and the grantor hereby consents and agrees with the grantee, whose correct address is 3301 Warsaw Avenue, Cincinnati, Ohio, that the funds secured by this mortgage may be paid out by the grantee as provided by Section 8321-1 of the General Code of Ohio." *Page 1